IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| JAMES MONROE DAILEY, | : | |
| Plaintiff, | : | |
| VS. | : | NO. 4:22-CV-00008-CDL-MSH |
| Mr. FLEMING, *et al.*, | : | |
| Defendants. | : | |

## ORDER AND RECOMMENDATION

*Pro se* Plaintiff James Monroe Dailey has timely filed Objections to the April 20, 2022, Order and Recommendation recommending dismissal of certain of Plaintiff's claims without prejudice (ECF No. 20). Plaintiff's objections will be liberally construed as a motion to amend his Complaint and granted. *See Newsome v. Chatham Cnty. Det. Ctr.*, 256 F. App'x 342, 344 (11th Cir. 2007) (per curiam). The undersigned has now conducted a preliminary screening of Plaintiff's claims "as amplified by the new factual allegations in [Plaintiff's] objections to the recommendation" and accordingly **WITHDRAWS** the April 20, 2022 Order and Recommendation (ECF No. 15). For the reasons discussed below, Plaintiff's failure-to-protect claims against Defendants Fleming, Spades, and Bryant shall proceed for further factual development, but it is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice.** Because the Court has now received the $402.00 filing fee, Plaintiff's motion to compel prison officials to deduct this sum from his prison trust fund account (ECF No. 14) is **DENIED as moot**.

## PRELIMINARY SCREENING OF PLAINTIFF'S COMPLAINT

### I.  Standard of Review

In accordance with the Prison Litigation Reform Act ("PLRA"), the district courts are obligated to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the

speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II. Factual Allegations

Plaintiff's claims arise from his present incarceration in the Rutledge State Prison ("RSP"). Compl. 6, ECF No. 1. According to the Complaint and the attachment thereto, Plaintiff requested protective custody because of threats made against Plaintiff by other inmates. Attach. 1 to Compl. 2, ECF No. 1-1. Although it is somewhat unclear from the pleadings, it appears that at some point Plaintiff was directed to return to his original dorm in the C-building but declined to do so; as a result, he was found guilty of several disciplinary infractions and again ordered to pack his property and return to the C-building.

*Id.* at 3-4. Plaintiff requested a lock for his property box and was instructed to contact the security office to obtain a lock. *Id.* Plaintiff was unable to obtain a lock, however, because no one would answer the door to the security office. *Id.* at 4.

Plaintiff returned to the C-building as directed and began to place his personal property in his locker. Attach. 1 to Compl. 4, ECF No. 1-1. As he did so, he "was hit in the head with a brick and stabbed repeatedly in [his] left arm and the back of [his] head" by two of his fellow inmates, who also stole Plaintiff's property. *Id.* at 4-5. Plaintiff was eventually able to break free of the inmates, and he "ran to the day room and repeatedly beat on the glass for assistance." *Id.* at 5. After approximately ten minutes, Defendant Bryant let Plaintiff into the courtyard. *Id.* Plaintiff pointed out his assailants, and he was taken to medical (and eventually to a hospital) for treatment. *Id.* at 5-6.

When Plaintiff returned from the hospital, he was placed in the J-3 building, which is "where they put people who had or was believed to have been exposed to the coronavirus." Attach. 1 to Compl. 7, ECF No. 1-1. After spending about two weeks in J-3, Plaintiff was again ordered to pack his property and return to the C-building. *Id.* Upon his return, Plaintiff states he "was shocked" to see his assailants still housed there. *Id.* Plaintiff contends his assailants taunted and threatened him for approximately three weeks while he was in C-building, and he further contends he made written requests and filed grievances concerning being housed in the same dorm as his assailants. *Id.* at 8. Plaintiff states that one of his assailants was transferred out of the C-building after about three weeks, but his second assailant remained in C-building until "another sim[i]lar

4

incident" occurred. *Id.* at 9-10. Plaintiff contends prison officials' action and inaction with respect to the attack and his property loss violated his constitutional rights, and as a result he seeks injunctive relief and monetary damages. Compl. 7, ECF No. 1.

### III. Plaintiff's Claims

#### A. Personal Property Claims

Plaintiff first suggests that Defendants violated his constitutional rights when they failed to prevent the loss of his personal property. To support this claim, Plaintiff alleges that unnamed prison officials failed to answer the door to the security office and thus failed to issue him a lock. This allegation, standing alone, fails to state an actionable claim. First, Plaintiff does not identify which named Defendant failed to issue him a lock. Plaintiff's claims could be dismissed on this ground alone. *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation). In addition, this allegation indicates that prison officials only acted negligently, and merely "negligent conduct does not give rise to § 1983 liability for resulting unintended loss of or injury to life, liberty, or property." *Cannon v. Macon Cnty.*, 1 F.3d 1558, 1563 (11th Cir. 1993).

Furthermore, even if Plaintiff had identified a particular prison guard or pleaded facts suggesting that a guard acted intentionally, his allegations would still fail to state an actionable claim; even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process

Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "Georgia provides a civil cause of action for the wrongful conversion of personal property." *Moore v. McLaughlin*, 569 F. App'x 656, 658 (11th Cir. 2014) (per curiam) (citing O.C.G.A. § 51-10-1). The Eleventh Circuit has "held that this cause of action constitutes a suitable postdeprivation remedy for procedural due process violations." *Id.* Plaintiff has not alleged that he has attempted to pursue a civil action based on Defendants' actions or that such a remedy is not available to him. Although Plaintiff contends "that O.C.G.A. § 51-10-1 requires that the wrongful[] conversion of the Plaintiff's personal property must be made by a government employee," that is simply not the law. Objs. 3, ECF No. 20; *see also* O.C.G.A. § 51-10-1 ("The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies.").[1] Plaintiff has therefore failed to state a due process claim, and his claims regarding his personal property should therefore be dismissed without prejudice.

      B.    <u>Failure-to-Protect Claims</u>

Plaintiff also suggests that Defendants should have prevented him from being attacked in C-building and that they should not have housed him with his assailants after the initial attack. Such claims arise under the Eighth Amendment to the United States

---

[1] Plaintiff does allege that he sent an "appeal grievance" to the "Department of Corrections Office of Risk Management," Attach. 1 to Compl. 8-9, ECF No. 1-1, but it is unclear whether this "appeal grievance" related to the loss of his property, and Plaintiff does not allege that he took any other steps to file a civil action in state court concerning the loss of his property.

Constitution. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prisoner asserting an Eighth Amendment failure-to-protect claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013). To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk. *Id.* at 1332. Negligent failure to protect an inmate from attack will not support a § 1983 claim. *See id.*

Plaintiff asserts that he requested protective custody beginning on or about April 12, 2021, because "several inmates" had threatened to harm him for "fail[ing] to pay them money for strips [he] had consumed." Attach. 1 to Compl. 2, ECF No. 1-1. Plaintiff, however, does not allege that the inmates from whom he was seeking protection were the same inmates who later assaulted him. The fact that Plaintiff requested protection from some other group of inmates therefore does not show that any Defendant knew or should have known that Plaintiff was in danger from the inmates who actually attacked Plaintiff. *See, e.g., Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (per curiam) (affirming dismissal of failure-to-protect claim where plaintiff did not provide notice to prison officials that he was in danger from the specific inmate who attacked him).

On the other hand, Plaintiff also alleges that the inmates who attacked him "had a history of robbing inmates, and Rutledge State Prison knew of this and still ordered" Plaintiff to be placed in C-building. Compl. 7, ECF No. 1. More specifically, Plaintiff

7

alleges that Defendants Spades and Fleming knew his "attackers had commit[t]ed sim[i]lar crimes, multiple times against other inmates at the prison," that these two Defendants were responsible "for maintaining law and order within the confines of the prison," and that they consistently failed to punish inmates, like Plaintiff's attackers, who committed serious crimes in the prison.  Objs. 6, 8, ECF No 2.  Plaintiff has also alleged that he was placed back into the same dorm as his assailants after the attack, that his assailants continued to harass and threaten him when he returned to C-building, and that he made several written complaints to "security" about this issue.  Attach. 1 to Compl. 8, ECF No. 1-1.  These allegations indicate that Defendants Fleming and Spades knew Plaintiff's assailants had a history of robbing and assaulting other inmates and assigned Plaintiff to C-building before and after the attack despite this knowledge.  *See, e.g., Q.F. v. Daniel*, 768 F. App'x 935, 946 (11th Cir. 2019) (per curiam) (noting that "the defendants' supervisory positions suggest, at least by inference, that the defendants were aware of the staffing, classification, and segregation issues" at the prison); *Lane v. Philbin*, 835 F.3d 1302, 1309-10 (11th Cir. 2016) (holding that deputy warden and captain of security "were in a position to be subjectively aware of security-related issues" in building where prisoner was attacked); *see also* Attach. 1 to Compl. 3, 8, ECF No. 1-1 (stating that Defendant Fleming "ordered" Plaintiff to return to C-building); Compl. 1, 5, ECF No. 1 (stating that Plaintiff spoke to "Warden Security Flemings [sic]" at the hospital).  Plaintiff's failure-to-protect claims against Defendants Fleming and Spades shall therefore proceed for further factual development.

Plaintiff also alleges that Defendant Bryant, a prison guard, "was aware" that his attackers "posed a significant threat to the Plaintiff when she opened the door to C-1 and ordered the Plaintiff to put his property in the very cell that his attacker was assigned to C1-4." Objs. 8-9, ECF No. 20. Plaintiff alleges that Defendant Bryant's awareness was confirmed by her statement immediately after the attack that "it is 'Ellis and Murdock [Plaintiff's attackers] again.'" *Id.* at 8. Plaintiff's allegations that Defendant Bryant knew that she was placing Plaintiff in the same cell as at least one individual who was known to violently assault and rob other inmates are also sufficient at this early stage to permit his Eighth Amendment failure-to-protect claims against her to proceed for further factual development.

Plaintiff has failed to allege specific facts showing that any remaining named Defendant was aware that Plaintiff's assailants posed a substantial risk of serious harm to Plaintiff. As such, Plaintiff's failure-to-protect claims against any remaining Defendants should be dismissed without prejudice.

          C.     Fourteenth Amendment/Equal Protection Claims

Plaintiff also seeks to raise what he characterizes as Fourteenth Amendment or equal protection claims. Plaintiff appears to base these claims on his contention that Defendants violated his constitutional rights when they failed to press charges against his attackers or attempt to recover his stolen property. *See, e.g.,* Objs. 3-5, 7, ECF No. 20. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which provides: "No State shall . . . deny to any person within its jurisdiction the equal protection

of the laws." U.S. Const. amend. XIV; *see also* Objs. 8, ECF No. 20. In order to state an equal protection claim, a plaintiff must allege that similarly situated persons—or "comparators"—have been treated disparately through state action. *Williams v. Sec'y for Dep't of Corr.*, 131 F. App'x 682, 685-86 (11th Cir. 2005) (per curiam); *see also Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006).

In this case, Plaintiff has not alleged that any similarly situated person was treated differently than he was. He has therefore failed to state an actionable equal protection claim. *See, e.g., Williams*, 131 F. App'x at 687 (affirming dismissal of equal protection claims where plaintiff "failed to allege facts showing that any other specific inmate" had been treated differently than plaintiff). Furthermore, the United States District Courts have no authority to order state or federal law enforcement agencies or prosecutors to initiate investigations or prosecutions. *Otero v. U.S. Attorney Gen.*, 832 F.2d 141, 141 (11th Cir. 1987). Plaintiff, a private citizen, likewise has no power to originate criminal pleadings on his own initiative. *Id.* Thus, Plaintiff's claims seeking this form of relief are also subject to dismissal. *See Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) (affirming dismissal claims against sheriff who failed to press criminal charges against plaintiff's assailant because "[e]ven if [the sheriff] were the person with authority to decide whether or not to pursue criminal charges . . . "[t]he decision to file or not file criminal charges falls within [the] category of acts that will not give rise to section 1983 liability").

### D. Failure-to-Intervene Claims

Plaintiff also alleges that he sought assistance during the assault for approximately

ten minutes before Defendant Bryant let Plaintiff into the courtyard and away from his attackers. Attach. 1 to Compl. 5, ECF No. 1-1 (stating that Plaintiff "repeatedly beat on the glass for assistance"). Prison officials who witness an inmate-on-inmate assault are generally obligated "to take reasonable steps to protect the victim." *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam) (citing *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)). Deliberate indifference to this obligation may violate the Eighth Amendment. *See, e.g., id.* In a failure-to-intervene case, "[t]he plaintiff has the burden to demonstrate that the defendant was in a position to intervene but failed to do so." *Id.* (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)).

To the extent Plaintiff seeks to raise a failure-to-intervene claim against Defendant Bryant, he has failed to meet this burden. Plaintiff does not allege any facts that suggest Defendant Bryant was in a position to intervene in the attack at any time before she actually did assist Plaintiff. Absent such facts, Plaintiff cannot state a cognizable claim. *See, e.g., Hadley*, 526 F.3d at 1331 (holding that there was no constitutional violation where plaintiff failed to present any evidence from which a reasonable jury could have found that officer "could have anticipated and then stopped" fellow officer from punching plaintiff once in the stomach); *cf. also Ledlow*, 500 F. App'x at 914 (affirming summary judgment on failure-to-protect claim where plaintiff failed to present evidence that prison guard "had the ability to reasonably insert himself" in altercation between inmates "to stop the assault without additional help" or "as to how long this assault went on before intervention occurred"). Any failure-to-intervene claims in this case should therefore be dismissed.

E.     Remaining Doe Defendants

Finally, the Court notes that Plaintiff may be attempting to raise claims against individuals for which he does not have names. Generally, "fictitious party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam). The only exception to this rule is when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his actual name is unknown. *See id.* (citing *Dean v. Barber*, 951 F.2d 1201, 1215-16 (11th Cir. 1992)). Therefore, to proceed against an unnamed defendant, a plaintiff must provide a "description of some kind which is sufficient to identify the person involved so that process can be served." *Dean*, 951 F.2d at 1216 (internal quotation marks omitted).

Plaintiff has not provided any sort of description of any unknown Defendant that is sufficient to identify those Defendants for service of process. *Vielma v. Gruler*, 808 F. App'x 872, 880-81 (11th Cir. 2020) (per curiam) (observing that "our precedent has never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity" instead requiring "an unambiguous description of a defendant that enables service of process"); *see also Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1318 n.4 (11th Cir. 2015) (declining to address claims against "John Doe Deputies" because they were "not proper parties" in the action); *Richardson*, 598 F.3d at 738 (plaintiff's description of "John Doe (Unknown Legal Name, Guard, Charlotte Correctional Institution" was "insufficient to identify the defendant among the many guards employed at CCI"). Any claims against any remaining Doe Defendants should

12

therefore be dismissed without prejudice. If discovery reveals the identity of these Defendants, Plaintiff may move to add them to this case at that time.

## IV. Conclusion

Based on the foregoing, Plaintiff's failure-to-protect claims against Defendants Fleming, Spades, and Bryant shall proceed for further factual development. It is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice.** Plaintiff's motion to compel (ECF No. 14) is **DENIED as moot.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Clay D. Land, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional claims against Defendants Fleming, Spades, and Bryant, it is accordingly **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be

appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Any Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. All Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the

Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period

shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED,** this 13th day of June, 2022.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE